### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | |
|---|---|
| United States | : |
| | : |
| v. | :     No. 3:98cr204 (JBA) |
| | : |
| Hector Martinez, | : |
|     aka "Big Ears" | : |

**RULING ON DEFENDANT'S MOTION UNDER § 2255 [DOCS. ## 45, 56]**

By motion brought pursuant to 28 U.S.C. § 2255, Hector Martinez, proceeding pro se, seeks to vacate his conviction after guilty plea on one count of conspiracy to possess with intent to distribute and to distribute a Schedule II substance in violation of 21 U.S.C. §§ 841(a)(1) and 846, principally claiming his conviction is flawed under Apprendi v. New Jersey, 530 U.S. 466 (2000), for failure of the indictment to specify any quantity of cocaine, claiming ineffective assistance of counsel, and arguing that he was denied due process of law and his Sixth Amendment rights by the increase in his sentence by facts not charged in the indictment nor submitted to a jury, pursuant to United States v. Booker, 543 U.S. 220 (2005). Martinez's arguments are without legal merit and no discovery or hearing is necessary to their disposition. Accordingly, his § 2255 Motion [Doc. # 45] and Motion for Discovery [Doc. # 56] will be denied.

## I. Background

On October 28, 1998, a federal grand jury returned a four-count indictment charging Martinez with conspiracy to possess

1

with intent to distribute and to distribute cocaine, a Schedule II substance, in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count One), possession with intent to distribute and distribution of a mixture or substance containing a detectable amount of marijuana, in violation of 21 U.S.C. § 841(a)(1) (Count Two), and two counts of possession with intent to distribute and distribution of a mixture or substance containing a detectable amount of cocaine, a Schedule II substance, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Counts Three and Four). None of the counts specified a quantity of drugs involved in the alleged offenses. Count One, to which Martinez ultimately pleaded guilty, states:

> Beginning on or about September 8, 1998, and continuing until on or about October 13, 1998, in the District of Connecticut, the defendant, HECTOR MARTINEZ, a.k.a. "Big Ears," and others known and unknown to the Grand Jury, did knowingly and intentionally combine, conspire, confederate and agree together and with one another, to possess with intent to distribute and to distribute cocaine, a Schedule II Controlled Substance, contrary to the provisions of Title 21, United States Code, Section 841(a)(1). All in violation of Title 21, United States Code, Section 846.

Even though Count One of the indictment did not specify any quantity of drugs, Martinez was subject to a maximum sentence of 20 years' imprisonment under 21 U.S.C. § 841(b)(1)(C) if convicted.[1] On the date the indictment was returned, counsel

_____

[1] On November 3, 1998, a federal grand jury returned a second indictment charging Martinez with one count of unlawful possession of ammunition by a convicted felon in violation of 18 U.S.C. § 922(g)(1). Martinez does not attack his guilty plea

appeared for Martinez and on November 4, 1998, Martinez was arraigned and entered a plea of not guilty. On November 5, 1998, the Government filed a Notice of Sentence Enhancement pursuant to 21 U.S.C. § 851(a)(1), giving notice that Martinez was exposed to increased punishment in the event of a conviction by reason of a prior felony narcotics conviction. Thus, under 21 U.S.C. § 841(b)(1)(C), Martinez's statutory maximum sentence exposure if convicted increased from 20 years to 30 years.

On December 22, 1998, Martinez pleaded guilty to Count One. He told the Court that he understood that he faced a maximum of 30 years' imprisonment for the charge and he acknowledged to the Court that he understood his plea agreement with the Government, which included stipulations of the calculation of his sentence under the United States Sentencing Guidelines. The stipulated guideline placed Martinez's sentencing range between 324 and 405 months based on an agreed drug quantity, with a base offense level of 34 and a total offense level of 36 after agreed-to enhancements for possession of a firearm in connection with the offense (two levels) and for having a leader/organizer role in the offense (three levels), and a downward adjustment for acceptance of responsibility (three levels), combined with a stipulated criminal history category VI. Martinez acknowledged that he understood the Court was not bound by any guideline

to this charge or his corresponding sentence.

stipulation between the parties and that he would not be permitted to withdraw his guilty plea if the Court did not calculate his guideline range in accordance with those stipulations. Notwithstanding his guilty plea in open court and his attendant acknowledgment of his understanding and acceptance of the terms of his plea agreement, however, after the U.S. Probation Officer issued the preliminary pre-sentence report on February 3, 1999, Attorney Weinstein relayed two objections from Martinez: an objection to the drug quantity calculation providing the grounds for a base offense level of 34 and an objection to the two-level enhancement for possession of a firearm. The Court scheduled a second hearing for May 25, 1999 and provided Martinez the opportunity to withdraw his guilty plea in the event he no longer agreed with the guideline stipulations in his plea agreement. Martinez declined the opportunity.

On July 20, 1999, the Court sentenced Martinez to 292 months' imprisonment, which sentence fell below the stipulated sentencing range of 324-405 months for the cocaine conspiracy conviction because at sentencing Martinez repudiated that portion of his plea agreement stipulating to a three-level enhancement for his role in the offense.[2] In open court, however, Martinez

---

[2] The Court also sentenced Martinez to 180 months' imprisonment for the ammunition possession conviction charged in the second indictment, to run concurrently with the conspiracy sentence.

authorized his attorney to agree to a two-level enhancement instead, and the Government acquiesced to obviate the need for a further hearing.  <u>See</u> Sent. Tr. (under seal) [Doc. # 51] at 26-27.  Martinez's sentencing range thus dropped to 292-365 months and, after rejecting the grounds advanced for a downward departure, the Court imposed sentence at the bottom of that range.  Importantly, Martinez, through counsel, reaffirmed that he agreed with the stipulated base offense level of 34, but disagreed on what drug quantity the Government used to reach that calculation.  <u>See</u> Sent. <u>id</u>. at 18-19.

On July 23, 1999 Martinez timely filed his notice of appeal.  None of the issues raised in the present motion were raised on direct appeal.  Rather, the appeal was directed to the Court's refusal to grant a downward departure from Martinez's sentencing guidelines.  On April 26, 2000, the Second Circuit Court of Appeals dismissed in part Martinez's appeal and affirmed in remaining part this Court's sentence.  <u>See</u> <u>United States v. Martinez</u>, 210 F.3d 356, Nos.99-1471, 99-1473, 2000 WL 510143 (2d Cir. Apr. 26, 2000).

On March 29, 2001, Martinez filed the instant § 2255 Motion and supporting memorandum, and replied to the Government's opposition on September 4, 2001.[3]  Combined, these papers raise a

---

[3] The Government concedes that Martinez's § 2255 motion is timely.

host of claims of error, which are divided between direct attacks on his sentence, which, as set forth _infra_, are procedurally barred, and corollary ineffective assistance of counsel claims. Almost all of Martinez's claims, however, derive from his erroneous application of _Apprendi_. They can be summarized as follows: 1) under _Apprendi_, his cocaine conspiracy conviction pursuant to 21 U.S.C. §§ 841(a)(1) and 846 is flawed because the indictment failed to charge a specific quantity of cocaine, which was an element of the offense that had to be found by a grand jury and proved beyond a reasonable doubt; 2) his guilty plea was not knowing, intelligent, and voluntary because he was not informed that the indictment failed to charge a quantity of cocaine, an element of the offense, and therefore failed to charge a crime; 3) Weinstein was ineffective during Martinez's guilty plea because he failed to advise him that, given that the indictment failed to specify a drug quantity, he was pleading guilty to a charge that did not constitute a crime, as Weinstein should have known by reading the briefs submitted to the Supreme Court during 1998 in _Jones v. United States_ (decision at 526 U.S. 227 (1999)); 4) Weinstein was ineffective at sentencing for failing to object to any increase in Martinez's sentence based on a quantity of drugs not charged in the indictment nor proven to a jury beyond a reasonable doubt; 5) Weinstein was ineffective on direct appeal for failing to challenge Martinez's guilty plea and

conviction based on the indictment's failure to include a drug quantity, particularly as Weinstein could have read the briefs filed and oral argument before the Supreme Court in Apprendi and acted accordingly before the Second Circuit decided his appeal; and 6) Weinstein was ineffective for failing to petition for certiorari after Apprendi issued. In support of his ineffective assistance claims related to Apprendi, Martinez claims that had he known the indictment to be defective for failure to specify drug quantity, he would not have pleaded guilty but would have taken his chances on a motion to dismiss the indictment and at trial.

Martinez's non-Apprendi arguments are: 1) Weinstein was ineffective because, at no time prior to Martinez's arraignment on November 4, 1998 when he pleaded not guilty, did Weinstein inform him that the Government could file a notice of sentence enhancement based on his prior narcotics felony conviction and thereby increase the statutory maximum to which he was exposed by 10 years, but that such notice would only be effective if filed before a guilty plea; 2) his guilty plea was not knowing, intelligent, and voluntary because he did not know, and Weinstein was ineffective for failing to inform him, that his sentence could be enhanced for possession of a firearm in connection with the offense and his role in the offense; and 3) Weinstein was ineffective at sentencing for failing to object to the hearsay

basis that established the amount of cocaine used in calculating his sentence under the Sentencing Guidelines.[4]

Lastly, after the Supreme Court decided <u>United States v. Booker</u>, 543 U.S. 220 (2005), Martinez submitted a Supplemental Argument on the Applicability of <u>Booker</u> [Doc. # 63], arguing that <u>Booker</u> provides that the sentencing guidelines are advisory, not mandatory, that neither the District Court nor the Second Circuit considered reasonableness or the factors in 18 U.S.C. § 3553(a) in reaching their decisions concerning his sentence, and that his sentence was enhanced based on facts not charged in the indictment, not submitted to the jury, and not proved to a jury beyond a reasonable doubt or admitted by him.  Martinez contends that <u>Booker</u> can be retroactively applied to his case under the <u>Teague</u> rule, because <u>Booker</u> was "dictated" by the Supreme Court's rulings in <u>Apprendi</u> and <u>Blakely</u>, and therefore it does not constitute a "new" rule and can be invoked by defendant in his

_____

[4] Martinez also attacks the indictment on the grounds that it includes two separate and distinct crimes, actual distribution of cocaine and conspiracy to possess with intent to distribute. The Court is perplexed over this challenge because actual distribution is not charged, rather conspiracy to distribute and to possess with the intent to distribute is charged: "Beginning on or about September 8, 1998, and continuing until on or about October 13, 1998, in the District of Connecticut, the defendant, HECTOR MARTINEZ, a.k.a. 'Big Ears,' and others known and unknown to the Grand Jury, did knowingly and intentionally combine, conspire, confederate and agree together and with one another, to possess with intent to distribute and to distribute cocaine, a Schedule II Controlled Substance, contrary to the provisions of Title 21, United States Code, Section 841(a)(1)."  Indictment [Doc. # 1], Count One.

collateral attack on the sentence imposed.  The Court can dispose of this argument at the outset because since the parties' post-Booker submissions in this case, the Second Circuit has rejected the retroactivity arguments raised by Martinez and has held that Booker "was not dictated by Apprendi or, for that matter, the Court's later decision in Blakely," that neither of Teague's exceptions to non-retroactivity applies to Booker, and that therefore "Booker is not retroactive, i.e., it does not apply to cases on collateral review where the defendant's conviction was final as of January 12, 2005, the date that Booker issued." Guzman v. United States, 404 F.3d 139, 141-44 (2d Cir. 2005). Because defendant's conviction was final as of January 12, 2005 (his appeal was dismissed in part and affirmed in remaining part on April 26, 2000), the Booker decision is not available to Martinez on collateral attack of his sentence.

## II.  § 2555 Standards

### A.    General

Section 2255 provides in relevant part:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the Court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255.  "Because requests for habeas corpus relief are

in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack." Ciak v. United States, 59 F.3d 296, 301 (2d Cir. 1995), abrogated on other grounds by Mickens v. Taylor, 535 U.S. 162 (2002); see United States v. Frady, 456 U.S. 152, 165 (1982)("It has, of course, long been settled law that an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment.")(quoting United States v. Addonizio, 442 U.S. 178, 184 (1979)).  Moreover, the "concern with finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas." United States v. Timmreck, 441 U.S. 780, 784 (1979); see also United States v. Dominguez-Benitez, 542 U.S. 74, 82-83 (2004).  "Generally, relief is available under section 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." Hardy v. United States, 878 F.2d 94, 97 (2d Cir. 1989)(quotations omitted).

### B.  Hearing

"Unless the [§ 2255] motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon

the United States attorney, grant a prompt hearing thereon,
determine the issues and make findings of fact and conclusions of
law with respect thereto. . . . A court may entertain and
determine such motion without requiring the production of the
prisoner at the hearing." 28 U.S.C. § 2255. The Second Circuit
permits disposing of a § 2255 motion without hearing where the
case records demonstrate the petitioner's claims are bereft of
merit or where the case records, expanded by documentary evidence
submitted by the parties including, for example, letters and
affidavits, render a full testimonial hearing unnecessary. <u>See</u>
<u>Chang v. United States</u>, 250 F.3d 79, 85-86 (2d Cir. 2001). As
discussed <u>infra</u>, the records in this case, as supplemented by
Martinez's and the Government's submissions, conclusively
establish that Martinez is not entitled to any relief.
Accordingly, the expenditure of resources attendant to discovery
and a full testimonial hearing are not required.

## III. Martinez's <u>Apprendi</u> Claim

Normal practice on a § 2255 motion is to first address
procedural bars to arguments raised on collateral attack but not
on direct appeal, in keeping with policy that precludes
consideration of such arguments without justification for failing
to have raised them earlier. However, because Martinez's
<u>Apprendi</u> argument is readily resolved by binding Second Circuit
precedent and its early resolution will create greater efficiency

throughout this ruling, the Court takes it up first.

In 1990, following a "clear majority of circuits," the Second Circuit held that quantity of narcotics was a sentencing factor and not an element of a charge under 21 U.S.C. §§ 841(a)(1) and 846.  See United States v. Campuzano, 905 F.2d 677, 678-79 (2d Cir. 1990).  The Supreme Court's decision in Apprendi only overturned Campuzano and its progeny in part: "insofar as they held that, under 21 U.S.C. § 841, drug quantity resulting in a sentence above a statutory maximum constituted a sentencing factor, not an element of the offense." United States v. Thomas, 274 F.3d 655, 663 (2d Cir. 2001) (en banc) (emphasis added).  Thus, where, as here, the type and quantity of drugs involved in the charged crime is not used to impose a sentence above the statutory maximum, drug type and quantity remain, in accordance with Campuzano, merely sentencing factors:

> [A district court is not precluded] from considering drug quantity in determining a defendant's relevant conduct for sentencing purposes ... in cases where quantity is not charged in the indictment or found by the jury, so long as the resulting sentence does not exceed the statutory maximum. ...  The constitutional rule of Apprendi does not apply where the sentence imposed is not greater than the prescribed statutory maximum for the offense of conviction. ...
> Even if a threshold drug quantity is not charged in the indictment or found by the jury, however, drug type and quantity may be used to determine the appropriate sentence so long as the sentence imposed is not greater than the maximum penalty authorized by statute for the offense charged in the indictment and found by the jury.

Id. at 663-64, 673; see also United States v. Cordoba-Murgas, 422

F.3d 65, 71 (2d Cir. 2005) (noting "the rule of <u>Apprendi</u> and <u>Thomas</u> does not strip district courts of the authority to make factual findings as to drug quantity for use in sentencing, so long as the resulting sentence does not exceed the applicable statutory maximum").[5]

The Court imposed a sentence of 292 months' imprisonment, fully 68 months <u>below</u> the 30-year statutory maximum to which he was exposed based on the drug trafficking conspiracy charge as enhanced by a previous felony narcotics conviction.  There was thus no <u>Apprendi</u> violation in Martinez's narcotics trafficking indictment or at his sentencing, and thus no basis for Martinez's non-ineffective assistance <u>Apprendi</u> claims.  The Court now turns to procedural bars to Martinez's claims and his claims for ineffective assistance.

## IV.  <u>Teague</u> Bar

The Government argues that Martinez is procedurally barred

---

[5] The Supreme Court's decision in <u>Blakely v. Washington</u>, 542 U.S. 296 (2004), does not alter this analysis because the Second Circuit has held that <u>Blakely</u> is not retroactively applicable to cases on collateral review.  <u>See</u> <u>Green v. United States</u>, 397 F.3d 101, 103 (2d Cir. 2005) ("In <u>Carmona v. United States</u>, this Court considered whether the Supreme Court's <u>Blakely</u> decision applied retroactively to second or successive petitions. . . . This Court held that, because the Supreme Court had not clearly made <u>Blakely</u> retroactively applicable to cases on collateral review, <u>Blakely</u> did not retroactively apply to Carmona's application to file a second or successive petition."); <u>Carmona</u>, 390 F.3d 200, 202 (2d Cir. 2004) ("To date, the Supreme Court has not, in any other case, announced <u>Blakely</u> to be a new rule of constitutional law, nor has the Court held it to apply retroactively on collateral review.").

from raising arguments pursuant to the Supreme Court's decision in Apprendi v. New Jersey, 530 U.S. 466 (2000), under Teague v. Lane, 489 U.S. 288 (1989)(plurality opinion), and its progeny. Under Teague and its progeny, a "new rule" of criminal procedure announced by the Supreme Court applies retroactively to convictions already final upon announcement only in very limited circumstances: where the rule changes the scope of a criminal statute, forbids punishment of certain conduct or a certain category of punishment for a class of defendants because of their status or offense, or constitutes a "watershed rule of criminal procedure."  See Schiro v. Summerlin, 542 U.S. 348, 352 & n.4 (2004); Beard v. Banks, 542 U.S. 406, 411-19 (2004).[6]

However, a Teague bar does not apply to a criminal case still pending on direct review when a decision of the Supreme Court results in a new rule.  See Schiro, 542 U.S. at 351.  For Teague purposes, a conviction is not final and a case remains pending on direct review until the time for petitioning the Supreme Court for certiorari expires or the Supreme Court disposes of the petition in a manner adverse to the criminal defendant.  See Beard, 542 U.S. at 411-12 (citing in the context

---

[6] The only rule to date the Supreme Court has recognized as a "watershed" is the right to counsel rule of Gideon v. Wainwright, 372 U.S. 335 (1963).  See Beard, 542 U.S. at 417-19. The Second Circuit has held that Apprendi is not a watershed rule and therefore under Teague and progeny does not apply retroactively to initial § 2255 motions.  See Coleman v. United States, 329 F.3d 77 (2d Cir. 2003).

of a <u>Teague</u> finality discussion of a state conviction the § 2255
case <u>Clay v. United States</u>, 537 U.S. 522, 527 (2003)("Here, the
relevant context is postconviction relief, a context in which
finality has a long-recognized, clear meaning:  Finality attaches
when this Court affirms a conviction on the merits on direct
review or denies a petition for a writ of certiorari, or when the
time for filing a certiorari petition expires.")).  Accordingly,
because <u>Apprendi</u> was issued before expiration of the time period
within which Martinez could have petitioned the Supreme Court for
certiorari, Martinez is not <u>Teague</u> barred from raising <u>Apprendi</u>
arguments on § 2255.

## V.    Procedural Default

Nonetheless, Martinez still faces significant procedural
hurdles to having his non-ineffective assistance claims,
including his <u>Apprendi</u> ones, addressed here.  None of them were
raised on direct appeal.  Accordingly, the Government argues that
Martinez has procedurally defaulted on those claims and may not
raise them now in a § 2255 motion.  "Where a defendant has
procedurally defaulted a claim by failing to raise it on direct
review, the claim may be raised in habeas only if the defendant
can first demonstrate either cause and actual prejudice . . . or
that he is actually innocent."  <u>Bousley v. United States</u>, 523
U.S. 614, 622 (1998) (quotations and citations omitted).

Martinez does not attempt in his motion or reply to the

15

Government's opposition to demonstrate either basis for his failure to raise on direct review the claims he now presses. There is intuitive appeal to arguing that because Apprendi was not decided until after the Second Circuit rejected Martinez's direct appeal, the legal basis supporting his non-ineffective assistance Apprendi claims was not available to him and thus there is cause for his default. To succeed in this argument, however, Martinez must demonstrate that insufficiency due to lack of a specific drug quantity in his indictment was "a claim so novel that its legal basis [was] not reasonably available to counsel," id., a showing Martinez cannot make given that, following a "clear majority of circuits," the Second Circuit rejected this precise claim – that drug quantity was an element of a charge under 21 U.S.C. § 841(a)(1) and § 846 – almost nine years before his appeal was filed, in Campuzano, 905 F.2d at 678-79. Moreover, as the Supreme Court clarified in Bousley, Martinez cannot excuse his failure to raise the argument by claiming futility on the basis of the Second Circuit's earlier holding in Campuzano: "[f]utility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time." Bousley, 523 U.S. at 623. There is thus no need to discuss actual prejudice and Martinez does not attempt to show or claim factual innocence. Accordingly, Martinez is procedurally barred from raising any of his non-

ineffective assistance arguments.

## VI.  Ineffective Assistance[7]

Outside the guilty plea context, a successful claim of ineffective assistance of counsel requires a two part showing: 1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms; and 2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  See Strickland v. Washington, 466 U.S. 668, 687-688, 694 (1984).[8]  The two-part Strickland test also applies where a petitioner claims his guilty plea was constitutionally insufficient as a result of ineffective assistance of counsel,

---

[7] Martinez's ineffective assistance claims cannot be procedurally barred.  See Massaro v. United States, 538 U.S. 500, 504 (2003)("We hold that an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal.").  Massaro overruled prior Second Circuit precedent, Billy-Eko v. United States, 8 F.3d 111 (2d Cir. 1993).

[8] While Strickland expressly limited itself to counsel's assistance at trial or in a death penalty sentencing and did not consider "the role of counsel in an ordinary sentencing," Strickland, 466 U.S. at 686, the Supreme Court subsequently applied the prejudice prong of Strickland in holding that any increase in jail time constitutes prejudice although allowing that "the amount by which a defendant's sentence is increased by a particular decision may be a factor to consider in determining whether counsel's performance in failing to argue the point constitutes ineffective assistance," Glover v. United States, 531 U.S. 198, 204 (2001).  The Second Circuit has applied both prongs of Strickland to sentencing determinations made under the Sentencing Guidelines.  See Johnson v. United States, 313 F.3d 815, 817-19 (2d Cir. 2002)(per curiam).

see <u>Hill v. Lockhart</u>, 474 U.S. 52, 58 (1985), however with a
modified second part that "focuses on whether counsel's
constitutionally ineffective performance affected the outcome of
the plea process ... [that is] the defendant must show that there
is a reasonable probability that, but for counsel's errors, he
would not have pleaded guilty and would have insisted on going to
trial." <u>Id</u>. at 59.

The Court first considers Martinez's <u>Apprendi</u>-related
ineffective assistance claims, addressing seriatim the guilty
plea, sentencing, direct appeal, and failure-to-petition-for-
certiorari stages. Martinez first charges that Weinstein was
ineffective during the guilty plea for failing to advise him
that, given that the indictment failed to specify a drug
quantity, he was pleading guilty to a charge that did not
constitute a crime. Martinez is incorrect; Weinstein was not
deficient in this regard. First, as set forth above, <u>Campuzano</u>
and its progeny, which held that quantity of narcotics was a
sentencing factor and not an element of a charge under
21 U.S.C. §§ 841(a)(1) and 846, were the governing law of the
Second Circuit at the time of Martinez's plea in 1998. Thus, the
failure of the indictment to specify an amount of cocaine as an
element of the crime with which Martinez was charged was not
legally inadequate and would have been of no legal significance
in counseling him whether or not to plead guilty.

Second, under then-governing law, Martinez's sentencing prospects after a trial would have been even worse than after a guilty plea.  The Government, defense counsel, Martinez himself, and the presentence report all reached the same conclusion as to Martinez's Sentencing Guidelines calculation: Martinez's total offense level of 36 (a base level of 34 with a two-level firearm enhancement and a three-level leader/organizer enhancement, with a three-level subtraction for acceptance of responsibility) combined with his criminal history category of VI yielded an imprisonment range of 324 to 405 months.  Absent the three-level reduction for acceptance of responsibility, which would not have been available absent a guilty plea, the range would have calculated to 360 months to life.  The guilty plea therefore allowed for a sentence with three years less prison time than the minimum sentence imposed after a conviction by jury trial, and eliminated the possibility of life imprisonment.  In addition, at sentencing, Attorney Weinstein successfully prevailed upon the Court to reduce the stipulated role adjustment by one level, thereby securing a sentencing range with a minimum of 292 months.

It is against this backdrop that Martinez contends that Weinstein "acted 'outside the wide range of professionally competent assistance,'" Jameson v. Coughlin, 22 F.3d 427, 429 (2d Cir. 1994) (quoting Srickland, 466 U.S. at 690), for failing to counsel Martinez that the briefs filed with the Supreme Court in

Jones v. United States would result in the reversal of precedent
in a majority of circuit courts, including the Second Circuit,
and that Martinez should thus move to dismiss the indictment for
failure to specify drug quantity.  Martinez is wrong.  Not only
would such advice have been erroneous at the time Martinez claims
it should have been given, in light of Campuzano, it would have
been wrong even after the Supreme Court issued its decision in
Jones.  See Thomas, 274 F.3d at 661-62 ("We thus joined every
other circuit that had considered the question in holding that,
after Jones, drug quantity remained a sentencing factor to be
determined by the district judge, not an element of the offense
to be proved by the prosecutor beyond a reasonable doubt and
found by the jury.").  Weinstein's performance was thus not
deficient.

Martinez next charges that Weinstein was ineffective at
sentencing for failing to object to any offense level increase
based on a quantity of drugs not charged in the indictment.
Again, not only would such an objection have lacked merit under
the governing law at the time (Campuzano), it remains without
merit today under Thomas as Martinez was sentenced below his
statutory maximum.  Attorney Weinstein was thus not deficient for
having failed to make a baseless objection and Martinez can
demonstrate no prejudice stemming from it, as the Court would
have rejected the objection pursuant to binding precedent.

Martinez next charges that Weinstein was ineffective on direct appeal for failing to challenge Martinez's guilty plea and conviction based on the indictment's failure to include a drug quantity, particularly as Weinstein could have read the briefs filed and oral argument in Apprendi. Again, there can be no prejudice here because the Second Circuit would have rejected any Apprendi-type argument by citation to Campuzano and its progeny both before and after the issuance of the Supreme Court's decision in Apprendi given that Martinez's sentence fell below the statutory maximum to which he was exposed. Defense counsel therefore cannot be said to have performed deficiently for failing to make a frivolous argument. Cf. Jones v. Barnes, 463 U.S. 745, 751-52 (1983) (appellate counsel is not even required to raise "nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points," noting, "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues").

Finally, Martinez contends that Weinstein was ineffective for failure to petition for certiorari after Apprendi issued. The Court need not speculate here; even if Weinstein had done so, the Supreme Court would have denied certiorari as it did other petitions on similar grounds. See Thomas, 274 F.3d at 662 n.8

(noting that "the Supreme Court denied co-defendants Grady
Thomas's and Jason Thomas's petitions for writ of certiorari . .
. based on the District Court's findings concerning the
quantities of drugs involved in their individual crimes," where
both co-defendants were sentenced below the statutory maximum).
In addition, even if the Supreme Court had granted certiorari and
remanded for consideration in light of Apprendi as in the case of
Thomas co-defendant Ramse Thomas, the Second Circuit would have
rejected Martinez's claim for the same reason – because the
sentence this Court imposed was 68 months less than the statutory
maximum and the Second Circuit held in Thomas that a district
court is not precluded "from considering drug quantity in
determining a defendant's relevant conduct for sentencing
purposes . . . in cases where quantity is not charged in the
indictment or found by the jury, so long as the resulting
sentence does not exceed the statutory maximum."  274 F.3d at
663.  Thus, there can be no prejudice because petitioning for
certiorari would not have impacted the outcome of Martinez's
appeal.

     As to Martinez's non-Apprendi ineffective assistance claims,
Martinez first contends that Weinstein was ineffective because at
no time prior to his arraignment and plea of not-guilty on
November 4, 1998 did Weinstein inform Martinez that the
Government could file a notice of sentence enhancement pursuant

to 21 U.S.C. § 851 based on Martinez's prior narcotics felony conviction and thereby increase the statutory maximum to which Martinez was exposed to 20 from 30 years, but that such notice would only be effective if filed before entry of Martinez's guilty plea.[9]  The Government filed the § 851 notice on November 5, 1998.  Thus, had Martinez pled guilty at the time of his arraignment, he may have subsequently been able to argue that the Government was barred from seeking an enhancement to his sentence under § 851.  See, e.g., United States v. Severino, 316 F.3d 939, 953 n.3 (9th Cir. 2003) (Thomas, J., with whom Reinhardt, Berzon, and Rawlinson, Circuit Judges, joined, dissenting) (collecting cases); United States v. Mooring, 287 F.3d 725, 727-28 (8th Cir. 2002) (discussing case law); United States v. Dodson, 288 F.3d 153, 162 (5th Cir. 2002) (citing United States v. Noland, 495 F.2d 529 (5th Cir. 1974)); United States v. Ceballos, 302 F.3d 679, 690-92 (7th Cir. 2002) (discussing cases).[10]

---

[9] 21 U.S.C. § 851(a)(1) provides (emphasis added): No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court (an serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon.

[10] The Court notes that the Second Circuit has rejected this argument, holding that the requirements of § 851 are not jurisdictional.  See Sapia v. United States, 433 F.3d 212, 217 (2d Cir. 2005).

23

Martinez's § 851 ineffective assistance claim fails for two reasons, one procedural and one substantive. Preliminarily, Martinez's 53-page reply brief substantially augments his 13-page initial § 2255 motion, and, in consideration of Martinez's pro se status, the Court can say that at least a trace of most of the augmented arguments appear in that initial motion. However, Martinez's § 851 argument is nowhere found therein. <u>See</u> <u>Wright v. United States</u>, 139 F.3d 551, 553 (7th Cir. 1998) ("If the sufficiency argument was not made in Wright's initial [§ 2255] brief to this court, it should have been considered waived, despite the fact that defendant was proceeding pro se. . . . The reason for this rule of waiver is that a reply brief containing new theories deprives the respondent of an opportunity to brief those new issues."). More importantly, Martinez has not been shy about asserting what he would have done had Attorney Weinstein acted in the manner Martinez now asserts he should have, stating multiple times that he would not have pleaded guilty had Weinstein informed him that the indictment lacked a drug quantity. Martinez's assertions in this regard are provided to satisfy the prejudice prong of <u>Strickland</u>, which in the guilty plea context requires him to demonstrate that he would not have pleaded guilty but would have pushed to trial. Martinez thus cannot show prejudice from his counsel's performance at his arraignment because he nowhere asserts that had he been informed

by counsel of the notice requirement of § 851 he would have rushed to plead guilty before the Government could file such notice. To the contrary, Martinez repeatedly claims that he would never have pleaded guilty but for Weinstein's deficiencies.

Martinez next contends that Weinstein did not inform him prior to pleading guilty that the Court could factor into sentencing his use of a firearm and his role in the charged offense. Martinez's allegation here, in the face of the record, is insufficient to satisfy the "prejudice" requirement. Martinez does not claim that had Weinstein informed him of the possibility of enhancements for use of a firearm and role in the offense he would have pleaded not guilty and insisted on going to trial. Martinez also provides no support for the notion that he would have placed particular emphasis on the possibility of enhancements in deciding whether or not to plead guilty. Indeed, in light of Martinez's guilty plea colloquy with the Court, his plea agreement, and his declining of the Court's offer to withdraw his guilty plea, such allegations would appear disingenuous. At his guilty plea, Martinez told the Court that he had read the written plea agreement entered into with the Government, that he had initialed and signed it in Weinstein's presence, that he understood it, that it was his signature appearing on the signature page, and that the Government's in-court description of the plea agreement, including that it

included agreed-upon guideline stipulations, fully and accurately reflected his understanding of the agreement.  The stipulations included a three-level role enhancement and a two-level firearm enhancement.  Moreover, after first disclosure of the pre-sentence report, Martinez (through Weinstein) objected to the firearm enhancement, the Court convened another hearing to give Martinez an opportunity to withdraw his guilty plea in the event he disagreed with his former guideline stipulations, and Martinez declined the offer.  Finally, at sentencing, Martinez repudiated the three-level enhancement for role in the offense to which he had agreed but authorized his counsel in open court to accept a two-level enhancement instead.  Sent. Tr. at 26-27.

Martinez's third claim is that Weinstein should have objected at sentencing to the hearsay basis that established the amount of cocaine used in calculating his sentence under the Sentencing Guidelines.  This argument need not detain the Court long.  First, Martinez acknowledged that the plea agreement fully and accurately reflected his understanding of the agreement, including the base offense level stipulation of 34 derived from the agreed-upon drug quantity.  After first disclosure of the pre-sentence report, Martinez objected to the drug quantity calculation on which the base level of 34 was predicated, but when given the opportunity at the May 25, 1998 hearing to withdraw his guilty plea on this basis, Martinez declined.  And

at sentencing, Martinez confirmed that he continued to stipulate to the base offense level calculation of 34, although he still disputed the drug quantity amounts the Government used to reach that calculation. See Sent. Tr. at 18-19. Further, Weinstein did vigorously object to the evidence the Government offered at sentencing to support its calculation of drug quantity, including what Weinstein claimed were unreliable and unbelievable statements of the Government's informant. See id. at 17-18.

It is well settled that "when determining sentence, a sentencing court is free to consider hearsay evidence, evidence of uncharged crimes, dropped counts of an indictment and criminal activity resulting in acquittal." United States v. Reese, 33 F.3d 166, 174 (2d Cir. 1994). While there are circumstances in which hearsay is so unreliable it cannot support a sentencing determination, see United States v. Chunza-Plazas, 45 F.3d 51, 58 (2d Cir. 1995) (uncorroborated triple hearsay statement from witness with undisclosed identity insufficient to support finding of criminal money collection activity in United States), such circumstances are far from those obtaining at Martinez's sentencing with respect to the Government's evidence of drug quantity. Rather, as revealed in the sentencing transcript, the Government's evidence consisted of a known reliable informant's relaying of his own observations and Martinez's own statements. There is here neither deficient performance, because if

professional standards required it, Weinstein did object, nor prejudice, because Martinez stipulated to a base offense level of 34, even though he disagreed with the method used by the Government to reach that level.

## VII. Conclusion

For the foregoing reasons, Martinez's motions [Docs. ## 45, 56] are DENIED.  No Certificate of Appealability will issue as no "substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), has been made.

IT IS SO ORDERED.

_____/s/_____
_____Janet Bond Arterton, U.S.D.J.

**Dated at New Haven, Connecticut, this 14th day of February, 2007.**